IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NORTH AMERICAN COMPANY FOR
LIFE AND HEALTH INSURANCE,

        Plaintiff,

v.

CHRISTOPHER WHITE,

        Defendant.

NO. 4:20-cv-00112

## COMPLAINT

Plaintiff, North American Company for Life and Health Insurance ("North American"), by its undersigned attorneys, alleges as follows:

## INTRODUCTION

1. On August 9, 2019, Defendant Christopher White ("White") submitted an application for $400,000 of life insurance coverage from North American. On the same day, relying upon the truthfulness and accuracy of White's responses to the application questions, North American issued White a life insurance policy with a premium based on an Essential (Non-Tobacco) rating.

2. During the course of an audit conducted pursuant to the company's quality control procedures regularly applied to a percentage of randomly selected, recently issued policies, North American obtained records revealing material misrepresentations that White had made to induce North American to issue the insurance coverage. While White had represented that he had not used any tobacco or nicotine products in the past 12 months, White reported to his nurse practitioner that he had been "vaping" – or using electronic cigarettes.

3. Further, while White represented that he had not been diagnosed with or medically treated for depression or any other mental disorder in the past ten years, records collected by North American reflect that he was being treated for a history of attention-deficit/hyperactivity disorder (ADHD).

4. If White had responded truthfully and accurately to the questions posed in the application concerning his tobacco use and his history of and treatment for ADHD, North American would not have issued the subject policy on the same terms and conditions.

5. If White had answered truthfully and accurately to the tobacco use question, North American would not have issued a policy with any more favorable rating than its "Select Tobacco" class, which would have resulted in increased premium payments.

6. If White had answered truthfully and accurately to the question directed to ADHD, White would have been prompted to answer additional questions during the online application process. Depending on White's responses to those follow-up questions, North American may have denied coverage entirely.

7. Based on White's material misrepresentations and omissions, North American informed White by letter dated October 7, 2019, that it was rescinding his life insurance policy, and invited White to consent to rescission to spare the parties the additional costs and burdens of litigation.

8. Following White's failure to respond to the October 7, 2019 letter, North American sent a follow-up letter on February 21, 2020, again inviting White to consent to rescission of the policy.

2
Case 4:20-cv-00112-FL    Document 1    Filed 06/17/20    Page 2 of 9

9. Because White did not respond to North American's efforts to resolve this matter and confirm the rescission of the policy without the necessity of litigation, North American now seeks judicial confirmation of its right to rescind the policy.

**PARTIES**

10. The plaintiff, North American, is a life insurance company that is and was at all times material to this action a corporation organized and existing under the laws of Iowa, with its principal place of business at 4350 Westown Parkway, West Des Moines, IA 50266, and so is a citizen of the State of Iowa. North American has at all times been duly licensed and authorized to conduct insurance operations within the State of North Carolina.

11. The defendant, Christopher White, is an individual who now resides and at all times material to this action did reside at 2505 Old Snow Hill Road, Kinston, NC, and upon information and belief, is a citizen of North Carolina.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states, namely, North American, a citizen of Iowa, and White, a citizen of North Carolina.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because White resides in this judicial district and because a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

**FACTUAL BACKGROUND**

14. All prior paragraphs are incorporated by reference.

15. North American offers an online life insurance application process.

16. When completing the online application, the applicant (potential insured) answers a series of questions to permit North American to determine whether and on what terms to issue the requested life insurance coverage. Depending on the answers to the online questions, the applicant may be asked additional, follow-up questions.

17. On August 9, 2019, White completed, signed and submitted an application for North American life insurance coverage through this online application process.

18. Based on the information White provided in his application, and reasonably and justifiably relying upon the accuracy and completeness of White's responses, which induced North American to issue the requested coverage and to assume the requested risk, on August 9, 2019, North American approved the issuance of an Essential (Non-Tobacco) policy on White's life in the amount of $400,000 (referred to as the "'156 Policy").

19. White responded "No" to Question 11 in the August 9, 2019 application, which asked, "In the past 12 months, have you used any tobacco or nicotine products (excluding less than 24 cigars)"?

20. Because he answered the question in the negative, the '156 Policy was issued with a non-tobacco rating.

21. White also responded "None of the above" to Question 19 in the August 9, 2019 application, which asked, "In the past 10 years, have you been medically diagnosed or medically treated for (Select all that apply): Depression or other mental disorder . . . ."

22. Because he answered "None of the above," White was not prompted to respond to the follow-up questions that would have been posed concerning the subject matter of Question 19.

23. White certified, acknowledged and confirmed through his signing and submission of the application that the "[s]tatements and answers in this application, including statements by

me in any medical questionnaire or supplement that become part of this application, are complete and true to the best of my knowledge and belief."

24. White further certified, acknowledged and confirmed through his signing and submission of the application that "Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law."

25. During the course of an audit conducted pursuant to North American's quality control procedures regularly applied to a percentage of randomly selected, recently issued policies, North American obtained records revealing material misrepresentations that White had made to induce North American to issue the insurance coverage. As a part of its audit, North American obtained medical records revealing that as of July 30, 2019, less than two weeks before submitting his application, White had reported to his nurse practitioner that he had been vaping, or using electronic cigarettes. Further, White's records for the same consultation show that White had been diagnosed with and treated for ADHD, and his nurse practitioner prescribed medication for this condition.

26. North American sent a letter dated October 7, 2019, mailed to White at the address of record he had provided to North American, stating that the company was rescinding the '156 Policy on the basis of the material misrepresentations and nondisclosures inducing North American to issue the policy. Reserving all of its rights, North American requested in this letter that White consent to the company's rescission of the policy without the necessity of litigation, offering to return all premiums White had paid for the '156 Policy, plus accumulated interest, as a part of that rescission.

27. White did not respond to the October 7, 2019 letter.

28. North American, through counsel, sent a second letter dated February 21, 2020, again inviting White to consent to the rescission of the policy. White did not respond to this letter, either.

29. Based on the multiple material misrepresentations and omissions already discovered by North American as described in the preceding paragraphs of this Complaint, it is reasonable to be concerned that there may be other material misrepresentations and omissions contained in the application affecting the risks assumed that have not yet been discovered, potentially providing additional, independent grounds for the rescission of the '156 Policy.

30. Accordingly, North American reserves the right to premise its rights of rescission not only upon the known misrepresentations and omissions referenced in the preceding paragraphs, but also upon any additional material factual misrepresentations and omissions affecting the risks assumed that may be identified through discovery in this action or otherwise.

31. Contemporaneously with service of this lawsuit, North American has tendered to White a check in the amount of $89.65 which is the total amount of premiums paid on the '156 Policy plus interest.

## COUNT I
## DECLARATORY JUDGMENT AND RESCISSION

32. All prior paragraphs are incorporated by reference.

33. White's response to application Question 11 was false because he reported to his medical provider on July 30, 2019, that he had been using electronic cigarettes, fewer than 12 months prior to submitting the application for the '156 Policy.

34. White's response to application Question 19 was false because he was being treated for ADHD as recently as July 30, 2019, fewer than 10 years prior to submitting the application for the '156 Policy.

35. In issuing the '156 Policy, North American reasonably and justifiably relied on White's representations in response to Question 11 that he had not used tobacco or nicotine products in the 12 months prior to submitting his application.

36. In issuing the '156 Policy, North American reasonably and justifiably relied on White's representations in response to Question 19 that he had not been diagnosed or treated for depression or anxiety in the 10 years prior to submitting his application.

37. The information provided by White regarding his nicotine and tobacco use was material to North American's decision to issue the '156 Policy. If White had responded accurately and truthfully to the application question and had disclosed his nicotine and tobacco use, his policy would have been issued (if at all) with no better than a tobacco rating, which would have increased his premium payments.

38. Because White did not disclose his history of ADHD, North American had no opportunity to pose the follow-up underwriting questions germane to that subject necessary to properly underwrite the risks to be assumed under the policy. Depending on the additional information that would have been responsive to the follow-up questions concerning Question 19, North American may have rejected the request for coverage in its entirety. Accordingly, the materiality of White's misrepresentation in response to Question 19 will be determined after completing in discovery in this action.

39. Given the nature of the misrepresentations and omissions already discovered, it is reasonable to be concerned that White may have made further misrepresentations in his responses to the application for the '156 Policy.

40. North American has filed this action within two years of the August 9, 2019 issuance of the '156 Policy.

7

41. North American's rescission of the '156 Policy is permitted not only by the express terms of the written contract of insurance but also by controlling North Carolina law.

42. As a result of White's material misrepresentations and omissions, North American is entitled to a judicial declaration that the '156 Policy is void *ab initio* and that it is entitled to rescission, along with all other and further relief as the Court deems equitable.

WHEREFORE, North American respectfully requests the Court enter an Order as follows:

A. Declaring that the '156 Policy is void *ab initio* due to White's material misrepresentations and omissions in the application;

B. Determining whether and to what extent White is entitled to receive the premiums and interest North American has tendered to White; and

C. Awarding such further relief as this Court deems appropriate, just and equitable.

Respectfully submitted this the 17th day of June, 2020.

        **NELSON MULLINS RILEY & SCARBOROUGH LLP**

        By: */s/ Leslie Lane Mize*
        Leslie Lane Mize
        N.C. State Bar No. 32790
        leslie.mize@nelsonmullins.com
        4140 Parklake Avenue, Suite 200
        Raleigh, North Carolina 27612
        Phone: (919) 877-3800
        Fax: (919) 877-3799
        *Local 83.1 Counsel*

OF COUNSEL:

        GODFREY & KAHN, S.C.
        Daniel C.W. Narvey
        (application for special appearance
        forthcoming)
        Andrew S. Oettinger
        (application for special appearance
        forthcoming)
        833 East Michigan Street, Suite 1800
        Milwaukee, WI 53202-5615
        Telephone: (414) 273-3500
        Facsimile: (414) 273-5198
        Email: dnarvey@gklaw.com
                aoettinger@gklaw.com

        *Attorneys for Plaintiff North American Company for Life and Health Insurance*